STATE OF CONNECTICUT *v.* LUFTI ZEKO

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued January 2—decision released May 22, 1979

*Donald D. Dakers,* assistant public defender, with whom was *Arthur Cohen,* law student intern, for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *John J. Redway,* assistant state's attorney, for the appellee (state).

LONGO, J. In this case, we are called upon to decide a single issue, important to the administration and supervision of criminal justice in this state: whether a mistrial should be declared when the prosecution

in a criminal case utilizes a rebuttal witness for impeachment purposes to show that the defendant had remained silent following his arrest, after the defendant had testified on cross-examination that he had cooperated with police and given them "everything" they had sought in relation to an arson investigation.

The defendant was convicted by a jury of committing the offense of arson in the third degree in violation of § 53a-113 of the General Statutes which makes criminal the reckless destruction of the building of another by intentionally starting a fire or causing an explosion therein.

Neither the facts nor the sufficiency of the evidence to support the defendant's conviction are in dispute: On April 28, 1974, a fire completely consumed a restaurant operated by the defendant in North Haven, Connecticut. There were no eyewitnesses presented to identify the origin of the fire. The defendant presented an alibi defense which was supported by his wife. The state offered evidence tending to prove that the fire was started by a timing device; that the presence of gasoline was detected in the remains of the building; that the defendant had previously burned six of his own establishments in Massachusetts and had collected large amounts of insurance; that the defendant's business "wasn't too good"; and that the restaurant was losing money. In addition, the state presented two witnesses who testified to admissions by the defendant implicating him in the setting of the fire at his restaurant: that one of these witnesses had agreed with the defendant to "torch" the building; that the other witness, the defendant's mother-in-law, testified that, a few days after the fire, the defendant had called her and

stated that he had "exploded my place"; and that the defendant had called his insurance agent one day before the conflagration to be sure of his insurance coverage.

The defendant elected to testify in his own behalf. During the course of his testimony, the defendant was asked, on cross-examination, whether he had cooperated with the North Haven police in the investigation of the fire and whether he had told the police "everything" in connection with the fire. The defendant replied, "I did."[1] After the defense rested, the state called a police officer to testify as a rebuttal witness. The following colloquy then ensued:

"Q. Was Mr. Zeko actually arrested on the basis of that warrant?

A. Yes sir, he was.

Q. Was he advised of his constitutional rights?

---

[1] "Q. Did you cooperate a hundred percent on this case when they came to see you?
A. Yes. I did.
Q. You did?
A. Yes, sir.
Q. You gave them all the information they wanted, the police?
A. What kind of information?
Q. The police?
A. What are you talking about?
Q. Information concerning the fire?
A. Yes, I did.
Q. You cooperated with the police?
A. Yes, I did.
Q. *When the police came you told them everything they wanted to know?*
A. *Absolutely.*
Q. No question in your mind about that?
A. No, sir.
Q. *You gave them everything; whatever they asked you, you would give it to them?*
A. *Everything.*" (Emphasis added.)

A. Yes sir, he was.

Q. Did you ask him about the fire?

A. Yes sir, I did.

Q. What, if anything, did he tell you about the fire?

A. He stated that he did not wish to make any statements relative to the fire.

Q. Did that terminate your interview with him?

A. Yes sir, it did."

Counsel for the defendant then requested that the jury be excused, and moved for a mistrial, claiming that the defendant's privilege against self-incrimination, secured by the fifth amendment, had been violated by the officer's testimony. No objection had been made to the cross-examination of the defendant or to the testimony of the officer, nor did defense counsel move to strike the answer.

The court denied the defendant's motion for a mistrial. The defendant refused the court's offer, on two occasions, to instruct the jury as to the limited purpose of the testimony; the court, however, instructed the jury, sua sponte, that the rebuttal testimony of the officer was admitted solely for the purpose of impeaching the defendant's credibility. The defendant took exception to the court's charge. The defendant has appealed to this court, assigning error in the denial of his motion for a mistrial.

I

In *Doyle* v. *Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), the United States Supreme Court raised to a constitutional level the prohibition of prosecutorial "comment on silence for impeach-

ment," prosecutorial conduct which, a year earlier in *United States* v. *Hale*, 422 U.S. 171, 95 S. Ct. 2133, 45 L. Ed. 2d 99 (1975), the court had ruled impermissible in federal courts under its supervisory power.[2]

The defendant in *Hale,* arrested for robbery, made no response to an officer's inquiry as to the source of money found on his person. In connection with his alibi testimony at trial, he testified that his wife had given him the money. In order to impeach him, the prosecutor asked why he had not told that story to the police at the time of his arrest. Reserving decision on the alternative constitutional ground of attack, the Supreme Court held that the evidence lacked significant probative value because, having been given his *Miranda* warnings; *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); the defendant's failure to explain about the money could as easily be taken to indicate reliance on the right to remain silent as to support an inference that the explanatory trial testimony was a later fabrication. Relying on its supervisory authority

---

[2] The source of the prohibition against the use by a state prosecutor of an accused's silence after arrest is, of course, the fifth amendment as applied to the states via the due process clause of the fourteenth amendment, and the Supreme Court's decision in *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), wherein the court indicated that "it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not . . . use at trial the fact that [a defendant] stood mute or claimed his privilege in the face of accusation." *Miranda* v. *Arizona,* supra, 468 n.37; accord, *United States* v. *Ghiz,* 491 F.2d 599 (4th Cir. 1974); *United States* v. *Guzman,* 446 F.2d 1137 (9th Cir. 1971), cert. denied, 404 U.S. 1022, 92 S. Ct. 697, 30 L. Ed. 2d 672 (1972); *United States* v. *Matos,* 444 F.2d 1071 (7th Cir. 1971); *United States* v. *Wick,* 416 F.2d 61 (7th Cir. 1969), cert. denied, 396 U.S. 961, 90 S. Ct. 436, 24 L. Ed. 2d 425 (1969).

over federal courts, the court held that it was prejudicial error for the trial court to permit the cross-examination of the defendant concerning his silence during police interrogation.

The following term the Supreme Court in *Doyle* elevated the principle to a constitutional level by holding, in an appeal from a state court conviction, that the use for impeachment purposes of a defendant's silence, after receipt of *Miranda* warnings, is a violation of the due process clause of the fourteenth amendment.[3] In so doing, the Supreme Court rejected the argument relied upon by the Ohio appellate court in affirming the defendant's conviction, that evidence offered by the state, not utilized to indicate a "confession by silence" or as substantive evidence of guilt, but merely as a cross-examination technique to impeach the defendant's credibility, was permissible. The court also reaffirmed its deci-

---

[3] The court in *Doyle* said: "Despite the importance of cross-examination, we have concluded that the *Miranda* decision compels rejection of the State's position. The warnings mandated by that case, as a prophylactic means of safeguarding Fifth Amendment rights, see *Michigan* v. *Tucker*, 417 U.S. 433, 443–444, 94 S. Ct. 2357, 41 L. Ed. 2d 182 (1974), require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. See *United States* v. *Hale*, 422 U.S. 171, 177, 95 S. Ct. 2133, 45 L. Ed. 2d 99 (1975). Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Doyle* v. *Ohio*, 426 U.S. 610, 617–18, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976).

sion in *Hale,* stating that the prosecution's need to present to the jury all information relevant to the truth of the defendant's story did not justify the use of post-arrest silence as an impeachment technique.

In *Doyle,* however, the court suggested that not *all* prosecutorial use of a defendant's post-arrest silence was constitutionally impermissible. The court, limiting the scope of its holding, stated that the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest. In that situation, the court reasoned, the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest. See *United States* v. *Fairchild,* 505 F.2d 1378, 1383 (5th Cir. 1975).

In *Fairchild,* the defendant, through his own testimony and as part of his defense, affirmatively put into issue his cooperative attitude, testifying and eliciting testimony that he had responded fully to all inquiries of law enforcement officials. In fact, however, after Fairchild had been given the *Miranda* warnings, he had remained silent. The Fifth Circuit Court of Appeals was of the opinion that a defendant was not insulated, either by *Miranda* or the fifth amendment, against impeachment to correct the impression that he had affirmatively created—that he had cooperated with the investigation—when in fact he had not. The court held that "in extreme cases, silence following *Miranda* warnings can be the type of act which is inconsistent with certain exculpatory trial testimony" and that the defendant, having himself raised the question of his cooperation

with the law enforcement agencies, opened the door to a full development, by cross-examination, of that subject. *United States* v. *Fairchild,* supra, 1382–83.[4]

Finally, in *State* v. *Cook,* 174 Conn. 73, 76, 381 A.2d 563 (1977), this court held that it was prejudicial error for the trial court to allow the prosecution on cross-examination to inquire of a defendant why he had not, at the time of his arrest, furnished the state with an alibi, claimed by the defendant at trial, holding that the defendant's silence under such circumstances could not "be laid in evidence

---

[4] The meaning of *United States* v. *Fairchild,* 505 F.2d 1378 (5th Cir. 1975), in light of *United States* v. *Hale,* 422 U.S. 171, 95 S. Ct. 2133, 45 L. Ed. 2d 99 (1975), and *Doyle* v. *Ohio,* 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), is somewhat unclear. *Fairchild* relied primarily upon *United States* v. *Ramirez,* 441 F.2d 950 (5th Cir.), cert. denied, 404 U.S. 869, 92 S. Ct. 91, 30 L. Ed. 2d 113 (1971), and also cited *United States ex rel. Burt* v. *New Jersey,* 475 F.2d 234 (3d Cir.), cert. denied, 414 U.S. 938, 94 S. Ct. 243, 38 L. Ed. 2d 165 (1973), for the proposition that the prosecutorial use of post-arrest silence for impeachment purposes was permissible. In *Hale,* however, the Supreme Court, purporting to resolve a conflict in the Courts of Appeals on this issue; compare *United States* v. *Semensohn,* 421 F.2d 1206, 1209 (2d Cir. 1970), with *United States* v. *Ramirez,* supra; held that such use was impermissible, thereby implicitly rejecting the decisions in *Ramirez* and *Burt,* which supplied the doctrinal underpinnings of *Fairchild.*

As we have indicated, *Fairchild* re-emerged in *Doyle* v. *Ohio,* supra, 619 n.11, as an example of the permissible prosecutorial use of post-arrest silence. We read this seeming inconsistency to mean that *Doyle* represents the general constitutional rule with respect to the use of post-arrest silence. Thus, we interpret *Fairchild* and its progeny; see, e.g., *United States* v. *Griffin,* 530 F.2d 101 (5th Cir. 1976); to be limited to their particular facts: in extreme cases, post-arrest silence may be graphically inconsistent with a defendant's direct testimony at trial concerning his cooperation with the police; see *Doyle* v. *Ohio,* supra, 621 (Stevens, J., dissenting); and hence admissible to contradict the defendant's testimony as to his behavior following arrest. See *United States* v. *Quintana-Gomez,* 488 F.2d 1246, 1248 (5th Cir. 1974); *Agnellino* v. *New Jersey,* 493 F.2d 714 (3d Cir. 1974).

against him." *State* v. *Ferrone,* 97 Conn. 258, 266, 116 A. 336 (1922). Significantly, the opinion cited both *United States* v. *Hale,* and *Doyle* v. *Ohio,* supra.

## II

As is fairly evident from the discussion thus far, the lines of argument in this appeal are clearly drawn. The state argues that the prosecution's use of the defendant's post-arrest silence in the present case was permissible solely to test the credibility of the defendant's assertions that he had given the police "everything" they had asked for following his arrest. The defendant, on the other hand, does not urge an across the board bar to the use of post-arrest silence, but argues that such use violated the principles enunciated in *Doyle* and *Hale,* adverted to in this court's decision in *State* v. *Cook,* supra. Although normally, in the absence of an objection or exception, rulings on evidence will not be reviewed, under the circumstances of this case, where the record supports the defendant's constitutional claim, the claimed error will be reviewed. *State* v. *Rice,* 172 Conn. 94, 101, 374 A.2d 128 (1976); *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). We find ourselves in agreement with the claims advanced by the defendant.

It requires little citation to acknowledge that, after an accused is in custody, our law accords him the right to remain silent, and to recognize that he may not be penalized for exercising this right. *State* v. *Ferrone,* 97 Conn. 258, 266, 116 A. 336 (1922); see *Miranda* v. *Arizona,* 384 U.S. 436, 468, n.37, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); *Grunewald* v. *United States,* 353 U.S. 391, 425, 77 S. Ct. 963, 1 L. Ed. 2d 931 (1957) (Black, J., concurring). As we pointed out in *State* v. *Cook,* supra, after *Doyle*

v. *Ohio,* supra, the principle is sacrosanct that the due process clause forbids the prosecution from using evidence of a defendant's post-arrest, post-*Miranda* warning silence either for substantive or impeachment purposes. Thus, the trial court was in error in allowing the prosecution to comment on the defendant's post-arrest silence. *State* v. *Ralls,* 167 Conn. 408, 430, 356 A.2d 147 (1974); *State* v. *Bates,* 140 Conn. 326, 329, 99 A.2d 133 (1953). It remains, however, to be determined whether reversible error may be predicated upon the prosecution's comments concerning the defendant's post-arrest silence.

## III

Although in *Doyle* v. *Ohio,* supra, the Supreme Court reversed the convictions of the defendants, the court's opinion clearly suggested that the result might have been different had the state claimed that the impeachment use of silence, in the circumstances of that case, was harmless error.[5] The applicability of the rule enunciated in *Doyle* thus requires a case-by-case application and permits a finding of harmless error. *United States* v. *Davis,* 546 F.2d 583, 594 (5th Cir. 1977); *Mercado* v. *Massey,* 536 F.2d 107, 109 (5th Cir. 1976).[6]

A substantial body of law has developed in the lower federal courts, interpreting the decision in

[5] The court stated in *Doyle:* "The State has not claimed that such use in the circumstances of this case might have been harmless error. Accordingly, petitioners' convictions are reversed." *Doyle* v. *Ohio,* 426 U.S. 610, 619–20, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976).

[6] We note that in *State* v. *Cook,* 174 Conn. 73, 76, 381 A.2d 563 (1977), this court held that the prosecutorial use of post-arrest silence had a significant potential for prejudice, and that such use was not harmless error. We adhere to this general principle. In the present case, however, as will immediately appear, the prosecution's comments took place in a context entirely distinct from *Cook;* thus *Cook* is not controlling on the harmless error issue.

*Doyle,* indicating that, under proper circumstances, a prosecutor's use of a defendant's post-arrest silence will not constitute reversible error. Those courts have applied the rule that "[w]hen there is but a single reference at trial to the fact of defendant's silence, the reference is neither repeated nor linked with defendant's exculpatory story, and the exculpatory story is transparently frivolous and evidence of guilt is otherwise overwhelming, the reference to defendant's silence constitutes harmless error." *Chapman* v. *United States,* 547 F.2d 1240, 1250 (5th Cir.), cert. denied, 431 U.S. 908, 97 S. Ct. 1705, 52 L. Ed. 2d 393 (1977); *Leake* v. *Cox,* 432 F.2d 982, 984 (4th Cir. 1970). The rule has similarly been applied where a prosecutor does not focus upon or highlight the defendant's silence in his cross-examination and closing remarks and where the prosecutor's comments do not strike at the "jugular" of the defendant's story. *United States* v. *Davis,* supra, 594; see *United States* v. *Harp,* 536 F.2d 601, 603 (5th Cir. 1976). We find these cases to be instructive in regard to the present appeal, and have determined that the error in allowing testimony concerning the defendant's post-arrest silence was harmless beyond a reasonable doubt; thus the court did not err in refusing to grant a mistrial. *State* v. *L'Heureux,* 166 Conn. 312, 323–24, 348 A.2d 578 (1974); *State* v. *Grimes,* 154 Conn. 314, 318, 228 A.2d 141 (1966).

The instant case does not present a prosecutorial focus—by repetitive questioning, on a defendant's silence, as in *Doyle* v. *Ohio,* supra. Nor can we say that the comments, in the context of either the cross-examination of the defendant or in the state's rebuttal witness, so "highlighted" the defendant's silence as to constitute prejudicial error.

Similarly, we cannot say that the comments "struck at the jugular" of the defendant's defense, as the context of the prosecution's comments reveals. Here, the state presented overwhelming evidence of the defendant's guilt: evidence which the defendant does not contest was more than sufficient to support the conviction. The rebuttal testimony offered by the state was presented on the very last day of a lengthy trial. This testimony did not paint, in any significant way, the prejudicial picture of an accused remaining silent in the face of police interrogation at the time of arrest, a factor manifestly distinguishing this case from the prosecutorial conduct discountenanced by the court in *United States* v. *Hale* and *Doyle* v. *Ohio*. See *United States* v. *Griffin,* 530 F.2d 101, 103 (5th Cir. 1976). The prosecutor never emphasized the fact of the defendant's custodial silence in his closing argument to the jury, nor does the transcript reveal the offer of any further testimony during the trial on this issue. Compare *United States* v. *Meneses-Davila,* 580 F.2d 888, 895–96 (5th Cir. 1978), and *United States* v. *Luna,* 539 F.2d 417 (5th Cir. 1976), with *Meeks* v. *Havener,* 545 F.2d 9, 10 (6th Cir. 1976). The single comment by the prosecution's rebuttal witness that the defendant had not given a statement following arrest, with no attempt then or in closing argument to suggest that the jury draw an implication of guilt from silence, is not sufficient to require a finding of prejudicial error. *Meeks* v. *Havener,* supra, 10; see *Chapman* v. *California,* 386 U.S. 18, 24–26, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).

Moreover, the United States courts of appeals that have considered this issue have uniformly held that reference to post-arrest, pretrial silence is constitutionally harmless where there is sufficient evi-

dence of guilt, and where the defendant's testimony and the comment upon his silence is, at most, ambiguous. *Meeks* v. *Havener, supra,* 10; *United States* v. *Earl,* 529 F.2d 1145, 1148 (6th Cir. 1976), and cases cited therein. The cases wherein the error has been found to be prejudicial disclose repetitive references to the defendant's silence, reemphasis of the fact on closing argument, and extensive, strongly-worded argument suggesting a connection between the defendant's silence and his guilt. See, e.g., *Minor* v. *Black,* 527 F.2d 1 (6th Cir. 1975); *Moye* v. *Paderick,* 526 F.2d 589 (4th Cir. 1975); *Fowle* v. *United States,* 410 F.2d 48, 49 n.1 (9th Cir. 1969); cf. *United States* v. *Edwards,* 576 F.2d 1152, 1155 (5th Cir. 1978). These factors are not present in this case.

The defendant's response on cross-examination was innocuous; no identifiable prejudice to his defense was occasioned by his statement that he had given the police "everything" concerning the arson investigation. The prosecution, furthermore, did not, by its rebuttal witness, seek to create the inference in the jury's mind that the defendant's "cooperation" with the police otherwise impacted upon his guilt or innocence. See *United States* v. *Martinez,* 577 F.2d 960, 963 (5th Cir. 1978); *United States* v. *Sklaroff,* 552 F.2d 1156, 1161–62 (5th Cir. 1977).

The preceding observations dictate that the rule in *Doyle* is inapplicable to the instant case. The challenged remarks did not have an "intolerably prejudicial impact"; see *United States* v. *Hale, supra,* 179–80; in these circumstances, considering the overwhelming evidence of guilt and the entire context of the prosecution's remarks. Compare *State* v. *Cook,* 174 Conn. 73, 76, 381 A.2d 563 (1977).

We note in closing, however, that the comment upon the silence of the accused as a prosecutorial technique is often a crooked knife, and one likely to turn in the prosecutor's hand. The infusion of "harmlessness" into error must be the exception, applicable in circumstances few and discrete, and to be sparingly employed. In this case, however, the remarks of the prosecution were harmless beyond a reasonable doubt. There was no error in the refusal of the court to grant a mistrial.

There is no error.

In this opinion the other judges concurred.