STATE OF CONNECTICUT *v.* JOHN SILANO
(12909)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and COVELLO, Js.

Argued June 4—decision released August 11, 1987

*Richard Emanuel,* for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Gary W. Nicholson,* assistant state's attorney, for the appellee (state).

SHEA, J. The defendant was convicted after a jury trial of arson in the first degree in violation of General Statutes § 53a-111.[1] In his appeal from the judgment the defendant claims that the trial court erred: (1) in instructing the jury concerning (a) the inferences it might draw from circumstantial evidence and (b) the elements of the crime of arson in the first degree; (2) in allowing the state to ask a question on cross-

---

[1] "[General Statutes] Sec. 53a-111. ARSON IN THE FIRST DEGREE: CLASS A FELONY. (a) A person is guilty of arson in the first degree when, with intent to destroy or damage a building, as defined in section 53a-100, he starts a fire or causes an explosion, and (1) the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied, or (2) any other person is injured, either directly or indirectly; or (3) such fire or explosion was caused for the purpose of collecting insurance proceeds for the resultant loss; or (4) at the scene of such fire or explosion a peace officer or firefighter is subjected to a substantial risk of bodily injury.

"(b) Arson in the first degree is a class A felony."

examination concerning his postarrest silence after *Miranda* warnings had been given; and (3) in denying his motion for a judgment of acquittal filed on the ground that the evidence was insufficient to establish his guilt beyond a reasonable doubt. We find no error.

The jury could reasonably have found from the evidence that on September 3, 1984, a fire started in the basement of the Lanza Market in Bridgeport, where the defendant worked as a butcher. His brother owned the store, which sold groceries. Lieutenant Andrew Fardy of the Bridgeport fire department received two calls, one on August 30 and the other on the afternoon of September 3, informing him that someone was going to burn down the Lanza Market. On the date of the fire, Fardy and Bridgeport police detective Albert Fedorek saw the defendant go down the basement stairway. Shortly before the fire had begun, Fardy observed the defendant run from the rear of the store. The two officers subsequently apprehended the defendant and arrested him. Following his conviction, the defendant was sentenced to a term of twelve years, execution of that term suspended after seven years, and then to a term of probation for five years.

I

A

The defendant challenges the charge to the jury upon the use of circumstantial evidence and upon the elements of the crime of arson in the first degree. The defendant claims that the trial court's instructions concerning circumstantial evidence impermissibly diminished or diluted the requisite constitutional standard for proof of guilt beyond a reasonable doubt. Ordinarily the defendant's failure to except to this portion of the court's charge, or to file a request to charge on circumstantial evidence would preclude review. Practice Book §§ 854, 4185. We shall review his claim,

however, because it implicates the fundamental constitutional right that the state prove the guilt of an accused beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 361, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Miller,* 202 Conn. 463, 489–90, 522 A.2d 249 (1987); *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973).

The defendant objects to portions of the charge in which the court used the phrase "reasonable and logical" as the criterion for drawing inferences from circumstantial evidence. The following excerpt from the charge is illustrative: From the circumstantial evidence "you are asked to draw whatever inference or conclusion is reasonable and logical. If it's not reasonable, it's not logical, then you cannot draw it. If it is reasonable and is logical, you should draw it, but you don't have to. That's a jury's prerogative. They are asked to do it. They should do it. But whether you do or not, is up to you." The defendant maintains that this instruction, allowing jurors to draw "reasonable" and "logical" inferences from circumstantial evidence, implies an even lower standard of proof in a criminal case than the impermissible "more probable than not" test. In *State* v. *Whelan,* 200 Conn. 743, 757, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), and in *State* v. *Rodgers,* 198 Conn. 53, 56–59, 502 A.2d 360 (1985), we found constitutional error where a portion of the charge may have implied that a jury should draw inferences from circumstantial evidence concerning a defendant's criminal intent if those inferences were more probable than not.

After giving the quoted instruction, the court told the jury that inferences could be drawn only if both the basic facts and the inferred facts were proved beyond a reasonable doubt. "Of course, [in] passing upon the guilt of an accused person on the basis of circumstantial evidence, you must be satisfied beyond a reason-

able doubt first, that certain facts or circumstances exist and second, that the existence of those facts or circumstances do beyond a reasonable doubt, reasonably and logically lead you to other facts establishing that the crime was committed by the accused." This instruction, closely following the reference to drawing inferences from circumstantial evidence when "reasonable and logical," leaves little basis for the defendant's constitutional challenge to that language.

We have often said that the charge should be read as a whole. "It is well established . . . that individual instructions are not to be judged in artificial isolation from the overall charge. *State* v. *Dolphin,* 195 Conn. 444, 451, 488 A.2d 812 (1985); *State* v. *Reid,* 193 Conn. 646, 660, 480 A.2d 463 (1984); *State* v. *Hines,* 187 Conn. 199, 209, 44 A.2d 314 (1982). The whole charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper verdict; *State* v. *Corchado,* 188 Conn. 653, 660, 453 A.2d 427 (1982); *State* v. *Williams,* 182 Conn. 262, 269, 438 A.2d 80 (1980); *State* v. *Piskorski,* 177 Conn. 677, 746–47, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); and not critically dissected in a microscopic search for possible error. *State* v. *Harris,* 172 Conn. 223, 226–27, 374 A.2d 203 (1977)." *State* v. *Reddick,* 197 Conn. 115, 132, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986); *State* v. *Miller,* supra, 491–92; *State* v. *Whelan,* supra, 757; *State* v. *Widget,* 11 Conn. App. 47, 52, 525 A.2d 548 (1987).

In the course of a charge on drawing inferences from circumstantial evidence, a court may correctly instruct a jury that it has the prerogative to draw inferences that are "reasonable" and "logical." Such an instruction, at least when qualified, as in this case, by a caveat that both the ultimate inference of guilt and the facts essential to that inference must be proved beyond

a reasonable doubt, does not dilute the constitutional standard of proof in a criminal case. We do not perceive the same potential for confusion of the jury in the "reasonable" and "logical" language that we have found in the "more probable than not" phrase. We note that three recent Appellate Court decisions have rejected claims that an instruction permitting a jury to draw "reasonable and logical" inferences is improper. *State* v. *Widget,* supra; *State* v. *Wylie,* 10 Conn. App. 683, 691–92, 525 A.2d 528 (1987); *State* v. *Wright,* 9 Conn. App. 275, 280–82, 518 A.2d 658 (1986). "The statement that inferences should be reasonable and logically drawn is not, in and of itself, erroneous. In fact, such an instruction, it has previously been recognized, is 'entirely proper.' *State* v. *Wright,* supra, 282; see *State* v. *Tatem,* 194 Conn. 594, 598, 483 A.2d 1087 (1984); D. Borden & L. Orland, Connecticut Criminal Jury Instructions § 2.5, pp. 43–44." *State* v. *Wylie,* supra, 691.

Although we do not believe that the disputed instructions, in the context of those immediately following, implied a "more probable than not" standard, even if they did suggest such a test the charge as a whole still met constitutional standards as applied to the issues in this case. We have affirmed convictions even though the court employed "more probable than not" language in the charge. *State* v. *Miller,* supra, 490–91; *State* v. *Reddick,* supra, 131–33. Even where we have reversed a conviction because of an erroneous use of a probability standard for drawing inferences, this court has employed the "reasonable and logical" terminology: "The inference drawn must be reasonable and logical, and not the result of speculation or conjecture. *State* v. *Gaynor,* 182 Conn. 501, 503, 438 A.2d 749 (1980)." *State* v. *Rodgers,* supra, 57. There is nothing inherently objectionable about a judge permitting, but not requiring, a jury to draw "reasonable and logical" inferences

from circumstantial evidence so long as it is made clear that the ultimate inference of guilt as well as the facts essential thereto must be established beyond a reasonable doubt.

## B

The defendant claims that the trial court erred in its instructions to the jury on one of the essential elements of arson in the first degree, the requirement that "at the scene of such fire or explosion a peace officer or firefighter [be] subjected to a substantial risk of bodily injury." General Statutes § 53a-111 (a) (4). During the course of the charge the trial court stated: "It is sufficient that at the time the fire was set, a reasonable person could have foreseen that the risk of bodily injury was substantial." The defendant contends that this isolated instruction was erroneous, and claims that a conviction for arson in the first degree requires that the fire which actually develops must pose a substantial risk to a peace officer or firefighter.

The defendant took no exceptions to the trial court's charge. More importantly, the defendant filed a request to charge in which he requested that the trial judge employ the definition of "substantial risk" used in *State v. Parmalee*, 197 Conn. 158, 496 A.2d 186 (1985).[2] In *Parmalee*, this court declared that "[t]he very act of

[2] The defendant requested the following instruction: "The third element of the specific offense charged against the defendant, arson in the first degree, requires that at the scene of such fire or explosion a peace officer or firefighter is subjected to a substantial risk of bodily injury. In determining whether this element has been proved by the State beyond a reasonable doubt, 'substantial risk' is defined as something more than 'reasonable possibility that such act might endanger' a peace officer or firefighter. *State* v. *Parmalee*, 197 Conn. 158, 164 n. 10 [496 A.2d 186] (1985). In further determining whether this element has been proven beyond a reasonable doubt, you must determine that the fire which actually developed posed something more than a reasonable possibility of endangering a peace officer or firefighter. *State* v. *Parmalee*, 197 Conn. 158 [496 A.2d 186] (1985)."

setting the fire and placing others at substantial risk triggers liability under [General Statutes (Rev. to 1981) § 53a-112]." Id., 164. The defendant now contends that the *State* v. *Parmalee,* supra, standard is appropriate only in a second degree arson case, and is improper in a first degree arson prosecution in which the state must prove the additional element that "a peace officer or firefighter [be] subjected to a substantial risk of bodily injury." General Statutes § 53a-111 (a) (4).

The defendant's procedural defaults would ordinarily preclude review. Practice Book §§ 854, 4185. Because a failure properly to instruct the jury on each element of the crime charged might result in denying the defendant due process of law, we shall nevertheless consider it. *State* v. *Cobb,* 199 Conn. 322, 326, 507 A.2d 457 (1986); *State* v. *Fleming,* 198 Conn. 255, 269–70, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986); *State* v. *Zayas,* 195 Conn. 611, 616, 490 A.2d 68 (1985). Our inquiry, however, is of a limited nature. " 'A claimed constitutional error, raised for the first time on appeal, will be examined, if at all, not to ascertain whether the ruling or instruction was undesirable, erroneous, or even universally condemned but rather whether when viewed in the context of the entire trial it violated some right guaranteed to the defendant by the fourteenth amendment to the constitution of the United States; *Cupp* v. *Naughten,* 414 U.S. 141, 146, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973); or article first, § 8 of the constitution of Connecticut.' *State* v. *Kurvin,* 186 Conn. 555, 564–65, 442 A.2d 1327 (1982). The question then is whether, considering the substance of the charge rather than the form of what was said, it is reasonably possible that the jury was misled. *State* v. *Smith,* [194 Conn. 213, 219, 479 A.2d 814 (1984)]." *State* v. *Zayas,* supra, 616–17. "It is the rare case in which an improper instruction will justify a reversal of a criminal convic-

tion when no objection has been made in the trial court." *Henderson* v. *Kibbe,* 431 U.S. 145, 154, 97 S. Ct. 1730, 52 L. Ed. 2d 203 (1977).

When the charge is read as a whole, and its "substance" is examined rather than isolated portions of it, the instructions made it clear to the jury that a firefighter or peace officer at the scene of the fire must actually be subjected to a substantial risk. The defendant objects to an isolated sentence in a charge that otherwise conforms to the instructions he would now request.[3] Thus, even if we accept the defendant's proposed interpretation of the first degree arson statute, General Statutes § 53a-111 (a) (4), the instructions were sufficient to meet the test proposed by the defendant on appeal, at least under the limited standard of review applicable where the error relied upon has been induced by the defendant. *State* v. *Zayas,* supra; *State* v. *Kur-*

---

[3] This portion of the charge was as follows: "The requirement is that they must actually be present at the location, at the place of the fire, but there is no requirement that they actually sustain or incur any bodily injury. But only that such a person is subject to a substantial risk of bodily injury at the scene of the fire. Now that distinguishes it from someone on the way to a fire. Must be present at the locus—the place of the fire. A substantial risk is one that is real. It is considerable or a material risk. In determining whether the element of substantial risk of bodily injury has been proven by the state beyond a reasonable doubt, consider that substantial risk is defined as something more than reasonable possibility that such act might endanger a peace officer or firefighter. In further determining whether this element has been proven beyond a reasonable doubt, you must determine that a fire which actually developed posed something more than a reasonable possibility of endangering a peace officer or a firefighter. A substantial risk is one that is real, considerable or material. *It is sufficient that at the time the fire was set, a reasonable person could have foreseen that the risk of bodily injury was substantial.* . . .

"This accused must be proven beyond a reasonable doubt to be the person who had started the fire in question. That at the time the fire began, that the accused had in his mind, the intent to destroy or damage the building and that at the scene of that fire at 500 Iranistan Avenue, that you are satisfied by proof beyond a reasonable doubt that a peace officer or a firefighter actually present, was subject to a substantial risk of bodily injury. Those are the elements of the offense." (Emphasis added.)

*vin, supra.* The court charged: "The essential element is that a peace officer or firefighter must be proven to have been *at the scene of the fire* and *while at the place or location of the fire,* the peace officer or firefighter was subject to a substantial risk of bodily injury. . . . The requirement is that they *must actually be present at the location at the place of the fire,* but there is no requirement that they actually sustain or incur any bodily injury. But only that *such a person is subject to a substantial risk of bodily injury at the scene of the fire."* (Emphasis added.) The charge next defined what constitutes a substantial risk. "In further determining whether this element has been proven beyond a reasonable doubt, you must determine that a fire *which actually developed* posed something more than a reasonable possibility of endangering a peace officer or a firefighter. A substantial risk is one that is real, considerable or material." (Emphasis added.)

A single inconsistent sentence in an otherwise proper charge did not deprive the defendant of a fair trial under circumstances in which he not only failed to take an exception, but also induced the claimed error by requesting the *Parmalee* charge.

## II

The defendant claims he was denied his right to due process, and his privilege against self-incrimination, in violation of the fifth, sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution, because the court allowed the state to cross-examine him about his failure to contact the police after the interrogation had ceased in order to correct the statement he had given to them. He also claims that the prosecutor commented about that failure during the state's final argument. The defendant characterizes this issue as one involving postarrest silence, and the state characterizes

it as one involving the permissible use of prior inconsistent statements to impeach credibility during cross-examination. We find that one of the prosecutor's questions on cross-examination was constitutionally improper, but hold that the error was harmless beyond a reasonable doubt under the circumstances of this case.

At police headquarters after his arrest, the police advised the defendant of his rights under *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). He expressed a willingness to talk. Initially, the defendant denied he had descended the cellar stairway of the market. After a private discussion with his brother, Anthony Silano, the defendant admitted to Inspector Anthony Fabrizi that he had gone to the bottom of the stairway, and smelled smoke. After the defendant began making inculpatory statements, his bond was reduced from $100,000 to $25,000.

On the witness stand, the defendant denied having gone down the cellar stairs and having smelled smoke. On cross-examination, the state impeached the defendant with the prior inconsistent statements he had made at the police station. No issue has been raised concerning that part of the cross-examination. The state went on, however, to ask the defendant why, after the interrogation had ceased, he did not return to the police to correct allegedly false statements he had made during that interrogation.

"Q. Did you, Mr. Silano, ever again contact Mister— Inspector Fabrizi to tell him that that story was untrue and that you simply said that because your brother made you?

"A. He knows that my brother made me. And he knew that my brother, if he was incompetent, he stood there and listened and wrote everything down. And then I was told to sign the statement and I was out on a $25,000 bond."

The defendant contends that this question was constitutionally impermissible because it resulted in the use of the defendant's silence against him after he had received *Miranda* warnings and had been arrested. *Doyle* v. *Ohio,* 426 U.S. 610, 618–19, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976). The defendant's failure to object to the question, would ordinarily preclude review. Practice Book § 288; see *State* v. *Evans,* supra. This claim of error, however, merits review under *State* v. *Evans,* supra, because "the record here supports [the defendant's] claim that a fundamental constitutional right of his is involved, the right to remain silent after *Miranda* warnings had been given. *State* v. *Morrill,* 197 Conn. 507, 535–37, 498 A.2d 76 (1985); *State* v. *Pellegrino,* 194 Conn. 279, 286–89, 480 A.2d 537 (1984)." *State* v. *Apostle,* 8 Conn. App. 216, 221, 512 A.2d 947 (1984).

In *State* v. *Apostle,* supra, the Appellate Court considered the issue of whether, after the warnings of *Miranda* have been given and the defendant has chosen to answer questions posed by the police, the defendant has an affirmative obligation, after his interrogation has ceased, to return to the police to correct a false statement made during that interrogation about the facts or circumstances of the crime. Id. The Appellate Court concluded, and we agree "that he does not, and that the state may not question him or comment about that failure." Id.

The state may impeach a defendant by cross-examination concerning a prior inconsistent statement made after arrest and the giving of *Miranda* warnings, even though such impeachment may call into question a defendant's silence about the truth when he made that prior inconsistent statement. *Anderson* v. *Charles,* 447 U.S. 404, 100 S. Ct. 2180, 65 L. Ed. 2d 222, reh. denied, 448 U.S. 912, 101 S. Ct. 27, 65 L. Ed. 2d 1173 (1980). Such an examination is allowed because it is impossible to "bifurcate" a prosecutor's questions concerning

inconsistency into those relating to facts contained in a prior statement and those concerning facts omitted therefrom. Id., 408–409. A prosecutor may not, however, question a defendant about his silence after the interrogation has ceased, since a "defendant may reassert his right to remain silent at any time, and if he ceases to answer questions, or to come forward with additional or correcting information after questions are no longer being asked of him, there is a reasonable possibility that he is relying upon that right." *State* v. *Apostle,* supra, 224. We conclude, therefore, that the question concerning the defendant's failure "ever again" to contact the police, after he had been arrested and given a *Miranda* warning, was improper under the strictures of *Doyle.*

A *Doyle* violation may, in a particular case, be so insignificant that it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict without the impermissible question or comment upon a defendant's silence following a *Miranda* warning. Under such circumstances, the state's use of a defendant's postarrest silence does not constitute reversible error. In limited instances, " '[w]hen there is but a single reference at trial to the fact of defendant's silence, the reference is neither repeated nor linked with defendant's exculpatory story, and the exculpatory story is transparently frivolous and evidence of guilt is otherwise overwhelming, the reference to defendant's silence constitutes harmless error.' *Chapman* v. *United States,* 547 F.2d 1240, 1250 (5th Cir.), cert. denied, 431 U.S. 908, 97 S. Ct. 1705, 52 L. Ed. 2d 393 (1977); *Leake* v. *Cox,* 432 F.2d 982, 984 (4th Cir. 1970). The [error] has similarly been [found to be harmless] where a prosecutor does not focus upon or highlight the defendant's silence in his cross-examination and closing remarks and where the prosecutor's comments do not strike at the 'jugular' of the defendant's story.

*United States* v. *Davis,* [546 F.2d 583, 594 (5th Cir.), cert. denied, 431 U.S. 906, 97 S. Ct. 1701, 52 L. Ed. 2d 391 (1977)]; see *United States* v. *Harp,* 536 F.2d 601, 603 (5th Cir. 1976)." *State* v. *Zeko,* 177 Conn. 545, 555, 418 A.2d 917 (1979); see *State* v. *Pellegrino,* supra, 291–92; *State* v. *Apostle,* supra, 227.

A number of factors lead us to the conclusion that the error in this case was harmless beyond a reasonable doubt. The prosecutor asked the question only once on cross-examination. No other testimony alluded to the defendant's silence. The defendant did not answer the inquiry whether he had failed to return to Fabrizi, but merely repeated his previous testimony that his brother had made him tell the police that he had gone down the stairs and smelled the smoke. His repetitious answer about being coerced by his brother and induced by the reduction in the amount of bond to give a false statement could not have affected the outcome of the case. The failure of his attorney to object to the question or to move for a mistrial indicates that he did not consider this portion of the cross-examination to have substantially prejudiced the defendant. See *State* v. *Leecan,* 198 Conn. 517, 526, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986). In closing argument the prosecutor made only a passing reference that the defendant "did nothing." The prosecutor's reference could just as well have been interpreted to mean that the defendant "did nothing" to explain credibly why his brother would force him to lie or that he "did nothing" to report the fire when he discovered it, as the preceding argument had maintained.[4] The prosecutor refrained from making any

---

[4] This portion of the closing argument was as follows: "The problem that he faces also is that, if he had given that statement voluntarily of his own free will, what are the ramifications for him. Why is he saying now he was coerced by his brother to admit that he was down there. Why is he saying that? Well it's very simple when you think about it because if he now remains consistent in his trial testimony with his statement that he gave to the police,

direct reference to the defendant's failure to return to the police to correct the statement he had made at the police station on the night of the incident.

In *State* v. *Zeko,* supra, 554–58, we carefully analyzed when a *Doyle* violation may be harmless. "The instant case does not present a prosecutorial focus—by repetitive questioning, on a defendant's silence, as in *Doyle* v. *Ohio,* supra. Nor can we say that the comments, in the context of . . . the cross-examination of the defendant . . . so 'highlighted' the defendant's silence as to constitute prejudicial error. . . . Similarly, we cannot say that the comments 'struck at the jugular'

---

he's got a lot of problems. First of which is, if he knew there was a fire in the basement, and he ran off because he was scared, why didn't he call the police. Why didn't he report the fire. Why didn't he go down the street next to the gas station where the fire box was. Why didn't he do any of that. It simply makes no sense. The only explanation that he can give is that he was forced by his brother, not—mind you, not by Inspector Fabrizi. He wasn't forced by him. He was forced by his own brother to make an incriminating statement that he was in the area of the basement when the fire was—at or about the time the fire started. It's just simply inconceivable that—and I think you can all appreciate it if you had been charged with a crime and you were sitting in Mr. Silano's shoes, that one of your relatives would come down the police station and force you to make an incriminating statement that you had been down in a basement area where a fire had started. It's simply inconceivable. The problems that he has with remaining consistent with that statement, as I've indicated is, he simply *did nothing.* If he really knew of the fire, if he had remained consistent with the statement that he gave to the police. He simply couldn't explain it. Why didn't he say anything to Fedorek. Why didn't he say anything to Fardy. If he had nothing to do with the fire, he certainly would bring it to their attention. He's a man who'd been employed there for a number of years. A loyal employee. Why would he not mention the fact that his place of business, where he had been working for 15 years or approximately that time, was on fire. The only way that he can do that—get around that problem, is to say my brother Tony forced me. Forced me to say it and that's why I said it. I lied to the police. And when you think about it, you've got to really scrutinize that very closely because the only evidence we have of this coercion that's supposedly occurred in a separate room while only him and his brother were present, is John Silano's testimony. We haven't heard anything from anyone else. It's simply John Silano saying, my brother forced me and that's why I told the police what I did." (Emphasis added.)

of the defendant's defense, as the context of the prosecution's comments reveals." Id., 555–56.

"The cases wherein the error has been found to be prejudicial disclose repetitive references to the defendant's silence, reemphasis of the fact on closing argument, and extensive, strongly-worded argument suggesting a connection between the defendant's silence and his guilt. See, e.g., *Minor* v. *Black,* 527 F.2d 1 (6th Cir. 1975); *Moye* v. *Paderick,* 526 F.2d 589 (4th Cir. 1975); *Fowle* v. *United States,* 410 F.2d 48, 49 n.1 (9th Cir. 1969); cf. *United States* v. *Edwards,* 576 F.2d 1152, 1155 (5th Cir. 1978)." *State* v. *Zeko,* supra, 557.

In the case at bar, there was only a single question by the prosecutor, a nonresponsive repetitive response by the defendant, and an ambiguous passing comment in the state's closing argument. As will be discussed in the next section of this opinion, there was overwhelming evidence of the defendant's guilt. We conclude that it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict without the impermissible question.

### III

The defendant's final claim of error is that the evidence was insufficient to establish his guilt of the crime charged beyond a reasonable doubt.

The jury could reasonably have found from the evidence that officers Fardy and Fedorek both saw the defendant go down the stairway to the basement, and that Fardy observed the defendant run from the rear of the store at about the time the fire began. The defendant confessed at the police station that he had gone into the basement, and had smelled smoke. His testimony at the trial contradicted his confession at the police station, raising doubts about his credibility. The defendant admitted that he used the same type of

butcher string and matches as were found at the scene of the fire. While the defense presented an expert witness, Michael Shanok, who claimed that the fire was of accidental origin, the state offered two experts, Patrick Savino and Robert Persons, who testified that the fire had been intentionally set. On the basis of this evidentiary record, the jury could reasonably have found that the state had proven, beyond a reasonable doubt, that the defendant intentionally started the fire in the manner charged in the information.

The defendant also contends that there was insufficient evidence that a firefighter was "subjected to a substantial risk of bodily injury." General Statutes § 53a-111 (a) (4). Even the defendant concedes that there was "*some* evidence" (emphasis added) of this element. Lieutenant William Haug of the Bridgeport fire department, a fourteen year veteran, testified that basement fires are especially dangerous because the means of entry to fight the fire is the stairway which in effect becomes a chimney where the smoke and heat from the fire rises. George Bryant, a firefighter in Bridgeport for three years, testified that, as the fire was being extinguished, he could not breathe because of the smoke. In fact, he had to leave the basement area to obtain a Scott air pack, an apparatus to help him breathe. Bryant also testified that two fans were operating, indicating that the electricity was still on in the building. He regarded this as a dangerous situation, because there was standing water on the floor. A good chance of electrocution existed. The water on the floor had been present before any water was used to extinguish the fire. There was sufficient evidence for a reasonable jury to find beyond a reasonable doubt that the fire posed a substantial risk to a firefighter or a peace officer.

When a verdict is challenged because of insufficient evidence, the issue is whether the trier of fact could reasonably have concluded, based upon the facts estab-

lished and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Rodriquez,* 200 Conn. 685, 693, 513 A.2d 71 (1986). *State* v. *Carter,* 196 Conn. 36, 44, 490 A.2d 1000 (1985). There was more than enough evidence for a jury reasonably to conclude that the defendant was guilty.

There is no error.

In this opinion the other justices concurred.