STATE OF CONNECTICUT *v.* CLAUDE RICE

HOUSE, C. J., COTTER, LOISELLE, BOGDANSKI and LONGO, Js.

Argued October 7—decision released December 14, 1976

*Nicholas P. Cardwell,* for the appellant (defendant).

*Richard E. Maloney,* assistant state's attorney, with whom, on the brief, was *George D. Stoughton,* state's attorney, for the appellee (state).

LONGO, J. The defendant was charged with assault in the first degree in violation of General Statutes § 53a-59 (a) (1), and unlawfully carrying a weapon in a vehicle in violation of General Statutes § 29-38. Upon trial to a jury he was acquitted

of the former charge and convicted of the latter, whereupon he was sentenced to the Connecticut correctional institution at Somers for a term of not less than two nor more than five years. The defendant has appealed from his conviction, arguing that his original detention by the police was unlawful, that the gun found upon his person was unlawfully obtained, that the charge to the jury was unconstitutional, that the court's refusal to set aside his conviction on the second count was against the law and the evidence, and that certain facts were impermissibly considered in sentencing the defendant.

The defendant's prosecution arose out of events occurring in the early hours of June 20, 1972. At approximately 1 a.m. Freddie McCloud, who shared an apartment at 14 Judson Street with the defendant, was awakened by a gunshot. Upon entering the defendant's bedroom he found the defendant sitting on his bed and the defendant's wife sitting in a chair with blood flowing from her arm. McCloud called the Hartford police department to report the shooting. Officers Robert Kardys and Charles E. Schofield were dispatched in their cruiser to 14 Judson Street to investigate an aggravated assault involving a gun. Upon arrival at the address the officers saw a vehicle containing a man, later identified to be Claude Rice, about to leave the driveway. Officer Kardys stepped in front of the car and, in an attempt to preserve the "scene" as it had been, advised the driver to stay where he had stopped, while Officer Schofield ran inside to administer first aid to the defendant's wife. Shortly thereafter, a backup cruiser containing Officers Fred T. Pepin and Paul Vanderheiden arrived and Officer Kardys told them to keep the car where it had stopped. Officer Kardys then joined Officer Scho-

field inside the apartment where he was told by the defendant's wife that the defendant had shot her, that he had a gun in his possession, and that he was leaving the premises in a car. Officer Kardys immediately shouted out the window to the other officers to be careful because the man in the car was responsible for the shooting and was armed. The officers also learned by radio that the man who had done the shooting was named Claude Rice. The man in the vehicle identified himself as Claude Rice, at which point he was told that he was under arrest and was requested to step out of the car. A search of the defendant then produced a loaded pistol.

The defendant first assigns as error the court's conclusion that he was lawfully detained by the police while leaving his driveway in his car. We agree with the trial court that the initial stop of Rice's vehicle was lawful. The defendant's person is protected from unreasonable searches and seizures by the fourth amendment made applicable to state action by the fourteenth amendment. *Camara* v. *Municipal Court,* 387 U.S. 523, 87 S. Ct. 1727, 18 L. Ed. 2d 930; *Ker* v. *California,* 374 U.S. 23, 30, 83 S. Ct. 1623, 10 L. Ed. 2d 726. Article first, § 7, of our state constitution provides the same protection. *State* v. *Watson,* 165 Conn. 577, 584, 345 A.2d 532. In recent years the courts have explicitly recognized that the police have the power to detain individuals on grounds of less than probable cause to arrest. This detention constitutes a seizure of the person, the lawfulness of which must be measured against the fourth amendment's guarantee of freedom from "unreasonable searches and seizures." *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889; *Adams* v. *Williams,* 407 U.S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612; *State* v. *Watson,* supra.

As we stated in *State* v. *Watson,* supra, 584: "Effective crime prevention and detection underlie the recognition that a police officer may, in appropriate circumstances and in an appropriate manner, approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. . . . An officer must act on more than a mere hunch. These facts upon which the stop is predicated and the suspicion which they arouse, in addition to forming the basis for a lawful stop, limit the scope of the officer's initial actions following the stop. *Carpenter* v. *Sigler,* 419 F.2d 169, 171 (8th Cir.); see *Terry* v. *Ohio,* . . . [392 U.S. 1, 29, 88 S. Ct. 1868, 20 L. Ed. 2d 889]. The results of the initial stop may arouse further suspicion or may dispel the questions in the officer's mind. If the latter is the case, the stop may go no further and the detained individual must be free to go. If, on the contrary, the officer's suspicions are confirmed or are further aroused, the stop may be prolonged and the scope enlarged as required by the circumstances."

We are mindful that the facts surrounding the stop of Claude Rice are distinguishable from those of most cases which have reached appellate courts. The defendant, unlike the defendants in *State* v. *Watson,* supra, and *Terry* v. *Ohio,* supra, had not been observed by a police officer in a course of patently suspicious behavior before the stop. Likewise, he had not been singled out by an informant, as had the defendant in *Adams* v. *Williams,* supra. There were, however, other significant factors which lead us to the conclusion that the initial stop of the defendant was reasonable. Officers Kardys and Schofield were responding to a call involving a serious crime. They knew from the

radio dispatch that a gun was involved. They arrived at the scene in the early hours of the morning, when few people are on the streets, to find a car departing from the driveway of the building in which they had been informed that the alleged crime had taken place. Officers Kardys and Schofield merely asked the defendant to remain where he was. They did not ask him to step from his vehicle nor did they conduct any search of his person. The intrusion was minimal and was, therefore, justified by the surrounding circumstances and by the gravity of the alleged crime under investigation. As was stated in *Adams* v. *Williams,* supra, 146, "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." Officers Kardys and Schofield did nothing more than maintain the status quo for a very brief period so that they might determine whether the stop of the defendant should be prolonged and its scope expanded to include arrest and search or whether he should be allowed to proceed. The stop lasted only a matter of moments before Officer Kardys shouted out the window that the detainee was involved in the shooting and that he was armed. The defendant does not dispute that probable cause for his arrest and search then existed. To hold that Officers Kardys and Schofield were not entitled momentarily to freeze the situation while they obtained more information would be to shackle our frontline law enforcement officials in a way never contemplated by our constitutions.

Because the stop of the defendant was lawful and because the gun was discovered in the course of a

search incident to an arrest for which there was undeniably probable cause, we find the defendant's objection to the admission into evidence of the gun and cartridges without merit.

The defendant also assigns as error the trial court's refusal to set aside the verdict of guilty on the charge of unlawfully carrying a weapon in a vehicle, in violation of General Statutes § 29-38.[1] The defendant first argues that he did not knowingly have possession of the gun. He basically argues that after the shooting he was in a state of shock and that when he got into his car he could not have been consciously aware that he still had the gun. The defendant's scienter is an issue peculiarly within the province of the jury to resolve from the evidence presented to them and from their observation of courtroom testimony. We will not disturb their conclusion on appeal.

The defendant makes a more serious argument challenging the conviction under General Statutes § 29-38 when he raises the issue of the constitutionality of the court's charge to the jury. The court charged in part as follows: "The statute also states that the presence of any such weapon in any vehicle shall be prima facie evidence of a violation of this section by the owner, operator and each occupant of the vehicle. Now, prima facie means evidence which if unexplained or uncontradicted is

---

[1] "[General Statutes] Sec. 29-38. WEAPONS IN VEHICLES. Any person who knowingly has, in any vehicle owned, operated or occupied by him any weapon for which a proper permit has not been issued as provided in section 29-28 or section 53-206, or has not registered such weapon as required by section 53-202, as the case may be, shall be fined not more than one thousand dollars or imprisoned not more than five years or both, and the presence of any such weapon in any vehicle shall be prima facie evidence of a violation of this section by the owner, operator and each occupant thereof."

sufficient in a jury case to carry the case to the jury and to sustain a verdict in favor on that issue. That is, it is evidence which indicates to a reasonable person such a strong possibility of guilt that an explanation is reasonably called for." The defendant failed to object to this charge and raises his challenges for the first time on appeal. As we stated in *State* v. *Evans,* 165 Conn. 61, 67, 327 A.2d 576: "We have repeatedly reiterated that this court will not consider claimed errors on the part of the trial court unless there has been a compliance with the provisions of § 652 of the Practice Book. See *State* v. *Hawkins,* 162 Conn. 514, 517, 294 A.2d 584; *Weyls* v. *Zoning Board of Appeals,* 161 Conn. 516, 521, 290 A.2d 350." In *State* v. *Evans,* supra, however, we recognized two exceptions to the rule. The first exception may occur in cases such as in *State* v. *Vars,* 154 Conn. 255, 224 A.2d 744, where we agreed to consider the applicability of a new constitutional right not readily foreseeable which had arisen between the time of trial and appeal. The second exceptional circumstance may occur "where the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." *State* v. *Evans,* supra, 70. We believe that this case falls within the second exception. The defendant claims that the jury were charged to the effect that the defendant carried the burden of proof in establishing that he did not knowingly possess the gun and that he was, therefore, required to prove his innocence in violation of the fourteenth amendment to the United States Constitution. *United States* v. *Romano,* 382 U.S. 136, 86 S. Ct. 279, 15 L. Ed. 2d 210; *Tot* v. *United States,* 319 U.S. 463, 63 S. Ct. 1241, 87 L. Ed. 519; *State* v. *Watson,* supra, 597. If, in fact, the defend-

ant were forced to assume that burden, and if there were no additional evidence from which the jury might infer knowing possession of the gun, the defendant would have been denied a fundamental constitutional right and a fair trial. *State* v. *Watson,* supra.[2] He should not, therefore, be precluded from asserting his constitutional claim on appeal.

In considering the defendant's claim under *State* v. *Watson,* supra, however, we find a distinction which takes this case from under the *Watson* rule and ultimately proves fatal to the defendant's case. In *State* v. *Watson,* the gun, of which the defendants were charged with possession, was found under the front seat. In the present case the officers discovered the gun on the defendant's person. In *State* v. *Watson,* supra, 596, we said: "Imputing knowledge of the presence of a weapon in a vehicle to an occupant without proof of any other relevant circumstance would be based on pure speculation and could not meet the standards reiterated in *Leary* v. *United States,* . . . [395 U.S. 6, 89 S. Ct. 1532, 23 L. Ed. 2d 57]." We hold that in this case another crucially relevant circumstance existed in that the gun was found on the defendant's person, a fact which would impress itself upon a reasonable jury and ensure that the conviction was not based on speculation. See *State* v. *Castagna,* 170 Conn. 80, 93–94, 364 A.2d 200.

---

[2] We stated in *State* v. *Watson,* 165 Conn. 577, 597, 345 A.2d 532: "The prima facie provision of § 29-38 had the inevitable effect of placing on the alleged violator the burden of proving his innocence. The provision 'and the presence of any such weapon in any vehicle shall be prima facie evidence of a violation of the section by the owner, operator and each occupant thereof' constitutes a denial of due process of law as protected by the fourteenth amendment and is therefore invalid."

The defendant also assigns as error the length of the sentence imposed upon the defendant by the court. The defendant urges this court to set aside the sentence on the ground that the trial judge sentenced the defendant in the belief that the acquittal on the shooting charge was improper. The defendant was sentenced to not less than two and not more than five years in the state correctional institution. General Statutes § 29-38 authorizes a sentence not to exceed five years. We have frequently stated that the trial judge has broad discretion in sentencing and "[w]e have repeatedly held that a claim of this character is simply an appeal for clemency made to a court which has no discretionary jurisdiction in the matter." *State* v. *Mendill,* 141 Conn. 360, 363, 106 A.2d 178; *State* v. *LaPorta,* 140 Conn. 610, 612, 102 A.2d 885.

Finally, the defendant raises the argument that he elected a trial on the charges of assault in the first degree and unlawfully carrying a weapon in a motor vehicle in order to prove his innocence of the assault charge, for which he was found not guilty. The defendant contends that the court should have imposed a lesser sentence than that imposed, since the state, in the event of guilty pleas, was prepared to recommend a nolle on the assault charge and a suspended sentence on the weapon charge. The defendant, in effect, claims that he was penalized for standing trial. We find no merit to this claim. An essential ingredient in any plea bargaining situation is the recognition by both the prosecution and the defense that a trial may produce a less favorable result for the defendant.

There is no error.

In this opinion the other judges concurred.