STATE OF CONNECTICUT *v.* LAWSON MCMULLEN
(2686)

HULL, BORDEN and SPALLONE, Js.

Argued June 6—decision released September 11, 1984

*Jonathan E. Silbert,* special public defender, with whom was *Kerry M. Wisser,* law student intern, for the appellant (defendant).

*William Domnarski,* deputy assistant state's attorney, with whom, on the brief, was *Michael Sullivan,* assistant state's attorney, for the appellee (state).

HULL, J. The defendant, Lawson McMullen, appeals[1] from the denial of his motions to dismiss and to suppress evidence and from his conviction after a trial to the court on charges of burglary in the third degree pursuant to General Statutes § 53a-103 and larceny in the second degree pursuant to General Statutes § 53a-123. The defendant claims, in this appeal, that certain evidence used against him was obtained through an improper investigative stop by police which led to his subsequent arrest. The court admitted that evidence after denying the defendant's motions to dismiss and to suppress which McMullen claims was error. We find no error.

At 12:45 a.m. on September 24, 1980, two Yale University police officers, William Hawkins and Thomas Charron, were dispatched to the Yale golf course pro shop in response to a silent alarm which had been activated there. The officers arrived, twelve to fourteen minutes later, at the corner of Conrad Drive

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

and Ray Road in New Haven. Upon turning onto Conrad Drive, a dead-end street terminating at the gate which is the only access to the Yale golf course, Hawkins and Charron observed only one vehicle on Conrad Drive, a station wagon coming toward them from the direction of the gate. When observed, the station wagon was at a point where there were only six to eight houses between it and the gate, all of which were on one side of the road.

The two officers passed the station wagon, and then turned around and followed it for a short distance before signalling the driver to pull over. Upon approaching the car, the officers noticed therein a typewriter in plain view. When the driver of the car, Michael Borghi, was unable to produce a drivers license,[2] the officers radioed a request for registration information to the New Haven police department.

While waiting for the requested registration information, Hawkins and Charron asked the three occupants of the car which of them owned the typewriter. Borghi stated that it belonged to Pamela Andrus who was, along with the defendant, a passenger in the car at the time. Andrus, however, was unable to answer several identifying questions concerning the typewriter. Approximately six or seven minutes after the officers had stopped the car, they received a message from the backup police who had also been dispatched to the pro shop. Those officers informed them that the cash register, containing approximately eighteen dollars, had been emptied and that a typewriter was missing. The three occupants of the car were then arrested and $17.05 in change was found on the defendant's person when he was searched pursuant to that arrest.

---

[2] Borghi stated that he was learning to drive under the tutelage of Pamela Andrus, who was sitting beside him at the time of the stop and who subsequently turned out to be the owner of the car.

At his trial,[3] the defendant filed a motion to dismiss and a motion to suppress claiming that the investigative stop was improper and that, as a result, the seized evidence was tainted and inadmissible. Both motions were denied, and after the defendant's subsequent conviction, this appeal was filed alleging error in the trial court's failure to suppress the evidence in question, and in that court's failure to dismiss the charges.

It is well established that an "investigative stop" of a vehicle may be made on facts which would not be sufficient to constitute probable cause for arrest. *United States* v. *Brignoni-Ponce,* 422 U.S. 873, 880, 95 S. Ct. 2574, 45 L. Ed. 2d 607 (1975); *State* v. *Watson,* 165 Conn. 577, 585, 345 A.2d 532 (1973). In fact, such a stop, where designed merely to "maintain the status quo momentarily while obtaining more information," may be the officer's most reasonable course of conduct. *Adams* v. *Williams,* 407 U.S. 143, 146, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972); *State* v. *Rice,* 172 Conn. 94, 99, 374 A.2d 128 (1976).

At what point in time there exists sufficient cause to make an investigative stop has been the focus of numerous opinions by courts at both the federal and state levels in recent years. While these opinions provide little in the way of concrete guidance, they make one point clear: "the totality of the circumstances—the whole picture—must be taken into account" in deciding whether the stop was proper. *United States* v. *Cortez,* 449 U.S. 411, 417, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981). Those circumstances must provide either "a 'reasonable and articulable' suspicion that the defendant had engaged in criminal activity. *Reid* v. *Georgia,*

[3] While both Borghi and Andrus were arrested and charged in connection with this incident, both of them agreed to testify against McMullen on the state's behalf, in exchange for suspended sentences and probation on charges of larceny in the second degree to which they both agreed to plead guilty.

448 U.S. 438, 440, 100 S. Ct. 2752, 65 L. Ed. 2d 890 (1980); *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)''; *State* v. *Carter,* 189 Conn. 611, 617, 458 A.2d 369 (1983); or ''specific and articulable'' facts which warrant the stop. *State* v. *Januszewski,* 182 Conn. 142, 148–49, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981).

In *State* v. *Rice,* supra, the court found an investigative stop, similar to the one in the present case, to be reasonable. The police officers in that case were responding to a call regarding a serious crime in which shots had been fired. Further, it was early morning and the defendant's car had been stopped while leaving the driveway of the building to which the officers had been called. Id., 98–99. The court found that ''[t]he intrusion was minimal and was, therefore, justified by the surrounding circumstances and by the gravity of the alleged crime under investigation.'' Id., 99.

With the exception of the presence of a gun, this case parallels *Rice,* supra. Hawkins and Charron were responding to a silent alarm from which it was reasonable to infer that there was a burglary in progress; it was late at night and they saw only the defendant's vehicle on Conrad Drive, coming from the direction of the golf course; and Conrad Drive has only one entrance to it. Given the totality of these circumstances, the officers had a reasonable and articulable basis for making the minimal intrusion that they made. As in *Rice,* supra, they neither asked anyone to step out of the car, nor did they search anyone at the time of the initial stop. The officers merely preserved a questionable situation in an attempt to dispel their suspicions. Id.; see *United States* v. *Brignoni-Ponce,* supra, 881.

We do not hold that this case is similar to those in which police officers observe suspicious behavior by the occupants of the vehicle, or peculiarities in its opera-

tion. See *State* v. *Paoletto,* 181 Conn. 172, 434 A.2d 954 (1980); *State* v. *Acklin,* 171 Conn. 105, 368 A.2d 212 (1976); *State* v. *Watson,* supra; *State* v. *Cobuzzi,* 161 Conn. 371, 288 A.2d 439 (1971), cert. denied, 404 U.S. 1017, 92 S. Ct. 677, 30 L. Ed. 2d 644 (1972). Rather, we hold that, as was the case in *United States* v. *Cortez,* supra, 418, the surrounding circumstances made the stop reasonable in this case.

In the present case, as in *United States* v. *Cortez,* supra, there was nothing suspicious about the vehicle, but significant facts, and deductions therefrom, implicated it in a less direct manner. See id., 419–21. Those facts, while they may be somewhat less certain than direct observation of suspicious behavior, may still amount to reasonable and articulable suspicion. We cannot forget that "[t]he process does not deal with hard certainties, but with probabilities." Id., 418. Nor can we forget that officers in the field cannot take time carefully to analyze the situation before them in jurisprudential fashion. "[T]he evidence . . . must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Id.

While the defendant briefed both the issue of the post-stop search of the vehicle, and the search of his person incident to arrest, he candidly conceded at oral argument that both the arrest and search were proper if the initial stop was proper. As we have found that the stop was, indeed, proper, we need not consider the subsequent arrest and search.

There is no error.

In this opinion the other judges concurred.