******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ANTHONY FLEMKE
(SC 19244)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald,
Espinosa and Robinson, Js.

*Argued February 10, 2014—officially released February 10, 2015*

*Glenn W. Falk*, assigned counsel, for the appellant (defendant).

*Kathryn W. Bare*, assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Andrew Reed Durham*, assistant state's attorney, for the appellee (state).

*Opinion*

PALMER, J. A jury found the defendant, Anthony Flemke, guilty of robbery in the first degree as an accessory in violation of General Statutes §§ 53a-134 (a) (4)[1] and 53a-8 (a),[2] and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (4) and 53a-48 (a).[3] Because the state also sought a sentence enhancement under General Statutes § 53-202k,[4] which provides for a mandatory, consecutive five year prison term when a person uses, or is armed with and threatens to use, a firearm in the commission of a class A, B or C felony, the jury further found that a firearm had been used[5] in the commission of the robbery, a class B felony.[6] Although it is undisputed that only the defendant's accomplice was armed during the commission of the robbery, the trial court sentenced the defendant under § 53-202k to a term of imprisonment of five years to be served consecutively with the eighteen month sentence that the court imposed for the defendant's conviction of robbery in the first degree as an accessory.[7] On appeal,[8] the defendant contends that we should overrule our holding in *State* v. *Davis*, 255 Conn. 782, 784, 792, 772 A.2d 559 (2001), that § 53-202k applies to unarmed accomplices. The defendant also contends that, if we decline to overrule *Davis*, we should limit the applicability of § 53-202k to unarmed accomplices who intended that a firearm be used in the commission of the underlying offense. We reject the defendant's claims and, therefore, affirm the judgment of the trial court.

The jury reasonably could have found the following relevant facts. At all times relevant to this appeal, the defendant, his girlfriend, Kelly Ann Danforth, and their mutual friend, Chadwick Matzdorff, resided together in an apartment in the town of Lebanon. On October 19, 2010, Danforth learned that Charissa McDonald, from whom she frequently purchased prescription drugs, including Percocet, illegally, was in possession of a large quantity of such drugs. Danforth proposed to the defendant and Matzdorff that they rob McDonald of the drugs, and, together, they devised a plan for doing so. Specifically, they agreed that Danforth would arrange to meet McDonald later that evening in the parking lot of a gas station in the town of Bolton, purportedly to purchase ten Percocet pills from her. Because McDonald was acquainted with the defendant and Danforth, they decided that Matzdorff should carry out the robbery using an airsoft pellet gun and ski mask belonging to the defendant. They also agreed that the defendant, using Danforth's car, would serve as Matzdorff's driver. According to the plan, while Danforth waited at home, the defendant would drive Matzdorff to the gas station where Danforth and McDonald had agreed to meet, and then wait in a nearby parking lot while Matzdorff carried out the robbery.

Later that evening, Danforth called McDonald and arranged to meet her at the gas station. McDonald subsequently sent a text message to Danforth and told her to meet her at a 7-Eleven store in the town of Andover instead. A friend of McDonald's, Kelly D'Aprile, then drove McDonald, in McDonald's car, to that location. While the women were waiting for Danforth to arrive, Matzdorff ran up to their car, opened the driver's door, pointed the gun at D'Aprile's head and demanded that she give him "everything" she had. Before D'Aprile could respond, Matzdorff reached into the car, grabbed a purse from the backseat, and ran off. On their way home, Matzdorff and the defendant discovered that Matzdorff had grabbed D'Aprile's purse, which contained no drugs.

A few months later, police interviewed Matzdorff about the robbery. At that time, he confessed to his role in the crime and implicated the defendant and Danforth as his accomplices.

The defendant and Danforth were subsequently arrested, and each was charged with robbery in the first degree as an accessory and conspiracy to commit robbery in the first degree. Additionally, the state sought a mandatory five year sentence enhancement for both the defendant and Danforth pursuant to § 53-202k on the basis of Matzdorff's use of a firearm during the commission of the robbery.[9] Following a joint trial, the jury found the defendant and Danforth guilty on both robbery counts. After accepting the verdicts, and, in accordance with § 53-202k, the court submitted the following interrogatory to the jury: "Has the state proven to all of you unanimously beyond a reasonable doubt, that the defendant was convicted of a class B felony and in the commission of such felony the perpetrator used or was armed with and threatened the use of, or displayed, or represented by his words or conduct that he possessed a firearm?" The jury answered the interrogatory in the affirmative.[10] The trial court rendered judgment in accordance with the jury verdicts, and, with respect to the charge of commission of a class A, B or C felony with a firearm in violation of § 53-202k, the court sentenced the defendant to a prison term of five years, to be served consecutively with the sentence imposed by the court for the conviction of robbery in the first degree as an accessory, as § 53-202k requires. In overruling the defendant's objection to the five year sentence enhancement, the trial court relied on *State* v. *Davis*, supra, 255 Conn. 784, 792, in which this court concluded that § 53-202k applies to unarmed accomplices who are charged and found guilty of being accessories pursuant to § 53a-8 (a). This appeal followed.

On appeal, the defendant claims that his sentence was improperly enhanced under § 53-202k because that provision, by its terms, applies only to a person or persons who actually use a firearm during the commis-

sion of a class A, B or C felony. Although the defendant acknowledges that this court rejected an identical claim in *Davis*, he urges us to overrule *Davis* in light of the legislature's subsequent enactment of General Statutes § 1-2z,[11] which codified the common-law plain meaning rule. Alternatively, the defendant contends that we should limit this court's holding in *Davis* to cases in which the jury is instructed that, to find an unarmed accomplice subject to sentence enhancement under § 53-202k, the state must prove that he or she intended that a firearm would be used in the commission of the offense by another participant.

We decline the defendant's invitation to overrule or otherwise limit *Davis* for several reasons. First, this court previously has concluded that the legislature, in enacting § 1-2z, did not intend to overrule any case decided prior to its enactment that construed a statute in a manner that conflicts with the dictates of § 1-2z. *Hummel* v. *Marten Transport, Ltd.*, 282 Conn. 477, 501, 923 A.2d 657 (2007). Second, contrary to the defendant's claim, our conclusion in *Davis* that § 53-202k applies to unarmed accomplices is in no way inconsistent with the plain meaning rule set forth in § 1-2z. Third, even if we agreed with the defendant that we should reconsider our interpretation of § 53-202k in *Davis*, the legislature has given no indication since *Davis* was decided that it disagrees with our construction of § 53-202k in that case, thereby giving rise to an inference that the legislature approves of our reading of the statute. Finally, our reasoning in *Davis* forecloses the defendant's contention that we should limit our holding in that case by construing § 53-202k to apply to an unarmed accomplice only if that accomplice intends that another participant in the underlying class A, B or C felony would use a firearm in the commission of the offense.

As we have observed, we do not write on a blank slate with respect to the issue of whether § 53-202k applies to an unarmed accomplice. In *Davis*, a jury found the defendant, Todd Darnell Davis, guilty of first degree robbery and first degree burglary in connection with an armed robbery of a restaurant. *State* v. *Davis*, supra, 255 Conn. 783–84. At trial, the evidence established that Davis and another man, who never was apprehended, had entered the restaurant wearing masks and that one of them held a gun to an employee's head while forcing the employee to open the restaurant's safe. Id., 784. Prior to trial, the state informed Davis that it intended to seek the five year sentence enhancement authorized by § 53-202k. Id., 785. At the sentencing hearing following the return of the jury's verdict, the state agreed with Davis that the evidence presented at trial indicated that he was likely unarmed at the time of the robbery. See id., 786. The trial court nevertheless sentenced Davis to a five year consecutive term of imprisonment in accordance with § 53-202k, concluding that it made no difference whether he per-

sonally was armed during the robbery, because, under well established principles of accessorial liability, he was liable for the criminal conduct of the person who was armed. See id.

On appeal to this court, Davis claimed, inter alia, that, contrary to the determination of the trial court, the plain language and legislative history of § 53-202k made it clear that the legislature intended that § 53-202k would apply only to persons who actually use a firearm during the commission of a class A, B or C felony, and that the legislature's failure to include accessory language in § 53-202k constituted "an affirmative decision by the legislature to apply § 53-202k only to principals." Id., 789. In rejecting this contention, we recognized that "[c]riminal statutes are to be read no more broadly than their language plainly requires" and that we therefore "must refrain from imposing criminal liability [when] the legislature has not expressly so intended." (Internal quotation marks omitted.) Id., 788. We concluded, nevertheless, that § 53-202k applied to Davis by virtue of § 53a-8 (a), which treats principals and accomplices alike for purposes of criminal liability. We explained that Davis, in arguing that § 53-202k did not apply to him, was attempting "to draw a distinction between principal and accessorial liability. Such a differentiation, however, misconstrues the nature of accessorial liability. This court has long since abandoned any practical distinction between the terms 'accessory' and 'principal' for the purpose of determining criminal liability. . . . Instead, '[t]he modern approach is to abandon completely the old common law terminology and simply provide that a person is legally accountable for the conduct of another when he is an accomplice of the other person in the commission of the crime.' . . . The legislature adopted this view and expressed it in . . . § 53a-8 (a). Accordingly, 'accessorial liability is not a distinct crime, but only an alternative means by which a substantive crime may be committed . . . .' " (Citations omitted; footnote omitted.) Id., 789–90.

We also stated that, although many penal statutes speak to the criminal conduct of a principal actor only, this does not mean that they do not also apply to accomplices. Id., 790 ("[a]lthough, by its terms, our murder statute encompasses only the principal actor, it undoubtedly applies to all participants in the crime"). To the contrary, such statutes must be read together with § 53a-8 (a), which provides that an accomplice is subject to exactly the same liability *and punishment* as the principal. We also explained that § 53a-8 (a) is no less applicable to § 53-202k than it is to substantive offenses: "The fact that § 53-202k is a sentence enhancement provision rather than a separate and distinct offense . . . is of no consequence to our analysis. [Section 53a-8] permits an accessory to be prosecuted and punished as if he were the principal offender. . . .

Thus, once convicted of armed robbery and armed burglary, even if as an accessory, [Davis] is legally indistinguishable from the principal actor. Accordingly, [Davis] is subject to the enhancement penalty that the principal also would have received [if] he [had] been caught and convicted. For purposes of legal analysis, it is irrelevant that [Davis] did not actually possess the gun." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 792. Finally, in reaching our determination, we observed that, because the legislature is presumed to know the state of the law when it enacts a statute, it would not be appropriate for this court to attribute to the legislature an intent to alter settled principles of accessorial liability through its enactment of § 53-202k. See id., 791 ("we refuse to adopt an interpretation of § 53-202k that would require courts to retreat to the days of determining which actors should be identified as principals and which should be identified as accomplices"); see also *State* v. *Apodaca*, 303 Conn. 378, 396, 33 A.3d 224 (2012) (observing that "accessorial liability . . . was firmly rooted in this state's criminal jurisprudence prior to the enactment of § 53-202k").

Although acknowledging that he cannot prevail on his claim concerning the applicability of § 53-202k to unarmed accomplices in light of our holding in *Davis*, the defendant contends that we should overrule that holding because of § 1-2z, which was enacted subsequent to our decision in *Davis* and requires courts to adhere to the plain and unambiguous meaning of the statutory language, and to eschew the use of extratextual sources as an interpretative aid, unless a construction of the statute in accordance with its plain meaning leads to bizarre or unworkable results. The defendant's claim founders on this court's decision in *Hummel* v. *Marten Transport, Ltd.*, supra, 282 Conn. 501, in which we expressly held that the enactment of § 1-2z did *not* signal an intent by the legislature to overrule cases in which our courts, prior to the passage of § 1-2z, had interpreted a statute in a manner inconsistent with the plain meaning rule as articulated in § 1-2z. Consequently, *Hummel* alone is sufficient to defeat the defendant's claim.

More important for present purposes, however, there is nothing about our analysis in *Davis* that is in any way inconsistent with the rule of § 1-2z. Although, as the defendant asserts, the language of § 53-202k refers to the principal actor only, under § 1-2z, we also must look to other relevant statutes to determine whether the meaning of § 53-202k may be ascertained without resort to extratextual evidence. As we explained in *Davis*, reading § 53-202k together with the accessory statute, § 53a-8 (a), leads to the conclusion that § 53-202k applies to an unarmed accomplice no less than it applies to an armed participant "because the basic theory of accessorial liability *requires such an interpreta-*

*tion.*"[12] (Emphasis added.) *State* v. *Davis*, supra, 255 Conn. 787. The defendant's plain meaning argument simply ignores the import of § 53a-8 (a), and, therefore, that argument must fail. Indeed, it reasonably may be argued that, when § 53-202k is considered in conjunction with § 53a-8 (a), those statutory provisions lead to the *opposite* conclusion, namely, that § 53-202k plainly and unambiguously *does* apply to an unarmed accomplice. We need not resolve that question in the present case, however, because the defendant has identified nothing in the legislative history of § 53-202k or in any other extratextual source, and we know of none, that would support the interpretation that he advances.[13]

Furthermore, even if the foregoing considerations do not provide sufficient reason for us to refrain from reconsidering our holding in *Davis*, the principle of legislative acquiescence would provide such reason. As we repeatedly have acknowledged, "our case law dictates that we should be especially wary of overturning a decision that involves the construction of a statute. . . . When we construe a statute, we act not as plenary lawgivers but as surrogates for another policy maker, [that is] the legislature. In our role as surrogates, our only responsibility is to determine what the legislature, within constitutional limits, intended to do. Sometimes, when we have made such a determination, the legislature instructs us that we have misconstrued its intentions. We are bound by the instructions so provided. . . . More often, however, the legislature takes no further action to clarify its intentions. . . . [W]e [therefore] have characterized the failure of the legislature to take corrective action as [a manifestation of] the legislature's acquiescence in our construction of a statute. . . . Once an appropriate interval to permit legislative reconsideration has passed without corrective legislative action, the inference of legislative acquiescence places a significant jurisprudential limitation on our own authority to reconsider the merits of our earlier decision." (Internal quotation marks omitted.) *Ciarlelli* v. *Hamden*, 299 Conn. 265, 285 n.12, 8 A.3d 1093 (2010). *Davis* was decided nearly fourteen years ago, a significant enough period of time to give rise to an inference that the legislature does not take issue with our interpretation of § 53-202k. See, e.g., *Commission on Human Rights & Opportunities* v. *Sullivan*, 285 Conn. 208, 221, 939 A.2d 541 (2008) (eight years without legislative action was appropriate interval to support inference of legislative acquiescence); *Rivera* v. *Commissioner of Correction*, 254 Conn. 214, 252, 756 A.2d 1264 (2000) (six year interval without legislative action supported inference of legislative acquiescence).

The inference of legislative acquiescence is strengthened in this case in light of our reliance on our reasoning in *Davis* in subsequent cases involving similar issues of statutory interpretation. For example, in *State* v. *Peeler*, 271 Conn. 338, 857 A.2d 808 (2004), cert. denied, 546

U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005), we relied on *Davis* in concluding that principles of accessorial liability could be used to prove an aggravating factor during the penalty phase of a capital felony trial even though the defendant, Russell Peeler, was not present during the commission of the underlying homicides. See id., 430–31, 435–37. In support of his claim to the contrary, Peeler argued, inter alia, that "nothing in Connecticut's death penalty statutory framework allow[ed] principles of vicarious liability to be used to prove aggravating factors," and that the state had failed to present evidence that he had instructed the principal to carry out the murders in a cruel, heinous or depraved manner. Id., 432. In rejecting this claim, we observed that General Statutes (Rev. to 1997) § 53a-46a (i), which sets forth the aggravating factors that a jury must find before a death sentence may be imposed, was analogous to the sentence enhancement provision at issue in *Davis*, and that principles of accessorial liability applied equally to both statutes. Id., 437–38. Specifically, we stated: "By its express terms, [§ 53a-8] provides that a person may be prosecuted and punished as the principal without actually committing the offense himself. [Peeler's] interpretation, however, would have this court focus solely [on] the use of accessorial liability to prosecute a defendant as if he were a principal . . . and ignore the statute's mandate that an accessory shall also be punished as if he were the principal. Our well established rules of statutory construction prohibit us from interpreting a statute in such a way as to ignore some of the express wording enacted by the legislature." (Emphasis omitted.) Id., 435. To conclude otherwise, we observed, "would vitiate one of the clearly stated, overarching purposes of [§ 53a-8], i.e., the punishment of a person as if he were the principal, when, with the requisite mental state, he solicits, requests, commands, importunes or intentionally aids the person who physically committed the crime." (Emphasis omitted.) Id.

We again relied on *Davis* in *State* v. *Gonzalez*, 300 Conn. 490, 507, 15 A.3d 1049 (2011), in which the defendant, Alfredo Gonzalez, was convicted of manslaughter in the first degree with a firearm as an accessory in violation of General Statutes §§ 53a-55a (a) and 53a-8 (a). Id., 491–92. On appeal, Gonzalez claimed that the trial court improperly failed to instruct the jury that it must find that he intended that another participant in the offense would use a firearm in order to find him guilty. Id., 492. In rejecting this claim, we noted, first, that the firearm element of manslaughter in the first degree is an aggravating circumstance that does not require proof of the perpetrator's intent to use the firearm. Id., 502–503. We further noted that "Connecticut case law remains consistent . . . in permitting the imposition of accessorial liability pursuant to § 53a-8, without requiring that the defendant intend to satisfy

a criminal statute's aggravating circumstance in cases [in which] that aggravating circumstance does not [require] a specific mental state and requires only that the principal act with the general intent to perform the proscribed act." Id., 506. We therefore concluded that the trial court was not required to instruct the jury that it could find Gonzalez guilty only upon proof that he intended that a firearm would be used in the commission of the offense. Id., 510. In reaching our determination, we once again relied on *Davis*, describing our decision therein as this court's "[m]ost significant" case with respect to the issue of whether accessorial liability may be imposed on a defendant without proof that he "intend[ed] to satisfy a criminal statute's aggravating circumstance [requirement] . . . ." Id., 506. What is clear from our discussion of the foregoing cases is that *Davis* has become an established part of our jurisprudence, and, as such, we will not disturb it in the absence of a compelling reason to do so, which, in the present case, the defendant has failed to provide.[14]

Finally, *Davis* did not expressly address the issue of whether § 53-202k requires the state to prove that an unarmed accomplice intended that another participant in the offense would use a firearm in the commission of the offense, as the defendant contends.[15] Our analysis in *Davis*, however, forecloses such a claim because, as we have explained, our conclusion in that case was predicated on the determination that Davis, having been convicted of robbery in the first degree as an accessory, was legally indistinguishable from the principal, and, consequently, he was subject to precisely the same punishment to which the principal would have been subject if the principal had been apprehended and convicted along with Davis. See *State* v. *Davis*, supra, 255 Conn. 789–93. In light of *Davis*, therefore, it is perfectly clear that, under § 53-202k, the state was required to prove only that the defendant was guilty of being an accessory to the underlying robbery and that a firearm was used in the commission of the robbery; the state was not required to also prove that the defendant intended that a firearm would be used during the robbery.[16] See id., 795–96 (proof that one participant in class A, B or C felony used firearm is all that is necessary to obtain sentence enhancement under § 53-202k for all other persons found guilty of that felony). Accordingly, we decline to limit *Davis* as the defendant advocates.[17]

The judgment is affirmed.

In this opinion the other justices concurred.

[1] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm, except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this

subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime."

[2] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[3] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[4] General Statutes § 53-202k provides: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm, as defined in section 53a-3, except an assault weapon, as defined in section 53-202a, shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

[5] Because the present case involves the actual use of a firearm, for the sake of convenience, we refer to the statutory prohibition in terms of use only.

[6] As we previously have held, "§ 53-202k is a sentence enhancement provision and not a separate crime. . . . Although § 53-202k does not expressly delegate to the jury the task of determining whether a firearm was used in the commission of a felony, we have interpreted [it] to require the jury to perform that fact-finding function." (Citation omitted.) *State* v. *Patterson*, 276 Conn. 452, 476–77, 886 A.2d 777 (2005).

[7] The court also imposed a six and one-half year concurrent term of imprisonment for the defendant's conviction of conspiracy to commit robbery in the first degree, for a total effective term of imprisonment of six and one-half years. The term of imprisonment is to be followed by a term of ten years of special parole.

[8] The defendant appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[9] The state initially charged the sentence enhancement as a separate count in the information. The state subsequently filed a two part substitute information charging the defendant, in the first part, with robbery in the first degree as an accessory and conspiracy to commit robbery in the first degree. In the second part of the substitute information, the state sought the sentence enhancement pursuant to § 53-202k. Thereafter, the trial court determined that the sentence enhancement did not apply to the conspiracy count but that the defendant could be subject to enhancement for the count charging robbery in the first degree as an accessory if the defendant were to be convicted on that count.

[10] The interrogatory was submitted in the case against the defendant and the case against Danforth. The jury also answered the interrogatory affirmatively in Danforth's case.

[11] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

[12] Notably, in *Davis*, we did not go beyond the language of §§ 53-202k and 53a-8 (a) in concluding that the former provision applies to unarmed accomplices, even though Davis had argued that the legislative history of § 53-202k militated against such an interpretation. *State* v. *Davis*, supra, 255 Conn. 787.

[13] The defendant contends that, if any part of § 53a-8 is relevant to clarifying the legislative knowledge requirement for a firearm sentence enhancement when a person allegedly provides a firearm to another, it is § 53a-8 (b) rather than § 53a-8 (a). Section 53a-8 (b) provides in relevant part that "[a] person who . . . delivers or provides any firearm . . . to another person to engage in conduct which constitutes an offense knowing or under circumstances in which he should know that such other person intends to use such firearm in such conduct shall be criminally liable for such conduct and shall be prosecuted and punished as if he were the principal offender."

In ascertaining the scope of § 53-202k in *Davis*, however, we considered the general principles of accessorial liability, which are set forth in subsection (a) of § 53a-8, not the different, special form of vicarious liability set forth in subsection (b) of § 53a-8, which ensures that any person who provides a firearm to another with the knowledge that it will be used in the commission of an offense may be held to answer for the offense as a principal even though he otherwise may not have "act[ed] with the mental state required for [the] commission of [that] offense," as § 53a-8 (a) expressly requires. Thus, although § 53a-8 (b) pertains to the sale, delivery or provision of a firearm, it appears that that subsection merely was intended to cover persons who might not be subject to accessorial liability under § 53a-8 (a) because they otherwise lacked the intent necessary for the commission of the substantive offense. We are not persuaded that our reliance in *Davis* on § 53a-8 (a) was improper because we have no reason to believe that § 53a-8 (b) was intended to limit the extent to which the principles reflected in § 53a-8 (a) apply to the use of firearms generally and to § 53-202k specifically.

[14] In support of his contention that we should overrule *Davis*, the defendant cites to case law from other jurisdictions declining to apply accessorial liability principles to sentence enhancement provisions similar to § 53-202k. See, e.g., *People* v. *Walker*, 18 Cal. 3d 232, 235–36, 555 P.2d 306, 133 Cal. Rptr. 520 (1976); *Garringer* v. *State*, 80 Haw. 327, 333–34, 909 P.2d 1142 (1996); *State* v. *Thompson*, 101 Idaho 430, 438, 614 P.2d 970 (1980); *Brooks* v. *State*, 124 Nev. 203, 210, 180 P.3d 657 (2008); *State* v. *Hicks*, 38 Or. App. 97, 100, 589 P.2d 1130 (1979); *Commonwealth* v. *Dickson*, 591 Pa. 364, 386–87, 918 A.2d 95 (2007); *Key* v. *State*, 563 S.W.2d 184, 185–86 (Tenn. 1978). However, only *Brooks* and *Key*, Nevada and Tennessee cases respectively, involved an accessorial liability statute that, like § 53a-8 (a), provides that an accomplice may be prosecuted "and punished" as if he were the principal offender; (internal quotation marks omitted) *Brooks* v. *State*, supra, 210 n.26; accord *Key* v. *State*, supra, 187; language that we relied on in *Davis* in concluding that § 53a-8 (a) applies to § 53-202k just as it applies to any other criminal statute. See *State* v. *Davis*, supra, 255 Conn. 792. Although courts in Nevada and Tennessee have reached a different conclusion than this court did in *Davis* with respect to the applicability of their accessorial liability statutes to sentence enhancement provisions, there is nothing in the reasoning of those cases that calls into question the reasoning in *Davis*, which, as we have observed, has not been legislatively overruled or limited. Furthermore, as the state observes, other state courts have interpreted their respective sentence enhancement and accomplice statutes in a manner consistent with our interpretation of §§ 53-202k and 53a-8 (a) in *Davis*. See, e.g., *Battle* v. *United States*, 515 A.2d 1120, 1128 (D.C. 1986) ("[t]here is no indication in the [relevant statutory scheme], or any case law of this jurisdiction, to suggest that the principles enunciated in [the District of Columbia accessorial liability statute] do not apply to enhance the sentence of an aider and abettor who assists an armed principal"); *State* v. *Holmes*, 451 So. 2d 1175, 1181 (La. App. 1984) ("Although [the sentence enhancement] statute is applicable to 'any person who uses a firearm,' it must be interpreted in pari materia with [inter alia, the accessory liability statute]. . . . Although [the defendant] did not have the gun, he is legally responsible for the person that did and is subject to punishment under [the sentence enhancement statute].").

[15] Davis did not claim that he was unaware that the other participant in the robbery intended to use a firearm in the commission of the offense. Indeed, in *Davis*, there was no basis in fact for such a claim because Davis and the other gun wielding participant jumped over the restaurant service counter together, and Davis continued to act in concert with that other participant while the other participant held a gun to the victim's head and demanded that the victim open the restaurant's safe. *State* v. *Davis*, supra, 255 Conn. 784.

[16] As the state notes, it was not required to prove that the defendant intended that the principal would use the firearm, even with respect to the underlying robbery, because the use of a firearm in the commission of that offense is an aggravating circumstance that itself requires no proof of intent. See, e.g., *State* v. *Avila*, 223 Conn. 595, 609, 613 A.2d 731 (1992) (when defendant is charged with first degree robbery as accessory, state is not required to prove that defendant intended that another participant in robbery would be armed with weapon because possession of weapon is aggravating circumstance and intent is not element of that aggravating circumstance). We note, however, that the defendant also was convicted of conspiracy to commit robbery in the first degree, which, as the trial court instructed the

jury, *does* require proof that the defendant intended that another participant in the robbery would use a firearm in the commission of that offense. See, e.g., *State* v. *Pond*, 315 Conn. 451, 489,    A.3d    (2015). In light of the jury's determination that the defendant conspired to commit robbery in the first degree, the jury necessarily also found beyond a reasonable doubt that the defendant had such an intent. Consequently, even if we were persuaded by the defendant's interpretation of § 53-202k as requiring proof by the state that he intended that another participant in the robbery would use a firearm, the defendant would not be entitled to a new trial because the court's failure to so instruct the jury was harmless.

[17] The defendant contends that applying § 53-202k to an unarmed accomplice, without proof that that accomplice intended that another participant in the underlying offense would use a firearm in the commission of the offense, raises "serious constitutional concerns" under *State* v. *Rice*, 172 Conn. 94, 101–102, 374 A.2d 128 (1976). This claim is meritless. In *Rice*, we concluded that, in a prosecution for knowingly possessing a weapon in a motor vehicle in violation of General Statutes (Rev. to 1972) § 29-38, mere proof of the weapon's presence in the vehicle is insufficient to establish that the defendant had knowledge of its presence, and requiring the defendant to prove that he lacked such knowledge would violate his right to have the state prove every element of the offense beyond a reasonable doubt. See id., 101–102 and n.2. *Rice* is inapposite to the present case because, in *Rice*, the issue was not what the statute required but, rather, whether the state's proof was sufficient under that statute. In the present case, the issue is what the statute, namely, § 53-202k, requires, and not whether the state's proof was sufficient.